IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa


Civil Action No. 04-F-1631
(Consolidated with 04-F-2104)


OLGA MONDRAGON,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.
_____

## ORDER ON SOCIAL SECURITY APPEALS
_____

      This matter comes before the Court on plaintiff's consolidated appeal of two separate denials of her requests for Social Security disability benefits.  The Court has reviewed the briefs submitted by the parties.  The Court finds that these appeals can be decided on the briefs and oral argument would not materially assist the Court.

**BACKGROUND**

      Plaintiff Olga Mondragon first applied for Social Security disability benefits on November 20, 1998, seeking benefits for a period of disability beginning February 6, 1997 (AR2 at 66).[1]  After initial denial by the Commissioner, she appealed and

_____

[1] The Administrative Record consists of two volumes, one containing pages AR 1-514 (which the Court will refer to as AR2), and the second containing pages AR 1-509 (which the Court will refer to as AR1).  There is substantial overlap between the contents of the two volumes and it is unclear to the Court why two separate volumes have been submitted.  To the extent possible, the Court will attempt to limit its references to AR2.

hearings were held before Administrative Law Judge Paul Conaway on December 16, 1999 (AR2 488-514) and April 5, 2000 (AR2 468-87).[2]

In a decision entered on May 9, 2000, ALJ Conaway denied plaintiff's disability claim, finding that she retained the residual functional capacity to return to her past relevant work as a hotel housekeeper (AR2 at 72-73). Plaintiff requested the Appeals Council to review the ALJ's decision. After denial of review by the Appeals Council on May 23, 2002, plaintiff did not initially take an appeal to the district court. However, plaintiff subsequently requested the Appeals Council to reconsider and reopen the appeal. That request was denied in a letter dated July 8, 2004, but the Appeals Council extended for 30 days the time within which plaintiff could appeal the decision to the district court (AR1 at 9-10). On August 6, 2004, plaintiff timely filed her appeal and the case was assigned Civil Action No. 04-1631.

In the interim, plaintiff filed another claim for disability benefits on November 13, 2000 (AR2 at 107-09), again requesting benefits for the period beginning February 6, 1997, submitting what she claimed was new medical evidence related to that period (*see* AR2 at 45) and for benefits for the period following Judge Conaway's decision, claiming the onset of disability after that date (AR2 at 46).

After initial denial by the Commissioner, plaintiff appealed and a hearing was held before Administrative Law Judge Antoinette Martinez on August 20, 2003 (AR2 438-67). In a decision entered on September 3, 2003, the ALJ denied plaintiff's claim,

---

[2] A second hearing was held due to the disqualification of the vocational expert at the first hearing.

2

finding that plaintiff had not established "good cause" to review the denial of benefits by

Judge Conaway as the supposedly new medical information was neither new or

material so as to cause a change of decision (AR2 at 46).  The ALJ also found as to the

period commencing May 10, 2000, that plaintiff could not perform her past relevant

work, but retained the residual functional capacity to perform some sedentary work in

jobs that existed in a significant number in the national and local economy (AR2 at 56-

58).  Thus the ALJ denied plaintiff's disability claim. The ALJ's determination became

final on August 13, 2004 when the Appeals Council declined to review the ALJ's

decision (AR2 at 5-7).  Plaintiff timely appealed that determination to the district court

on October 12, 2004 and the case was assigned Civil Action No. 04-2104.

The Court has jurisdiction to review both final decisions of the Commissioner of

Social Security under 42 U.S.C. § 405(g).  The two cases were consolidated by order of

the Court on February 15, 2005.  Both plaintiff and defendant filed consolidated briefs

addressing both appeals.  Although these two cases are consolidated for appeals

purposes, the Court will consider each appeal separately in order to make a clear

record.

**ALJ CONAWAY'S DECISION OF MAY 9, 2000**

In his written decision of May 9, 2000, Administrative Law Judge Conaway

denied plaintiff's application for benefits at step four of the five-step process. *See*

*Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988).  The ALJ determined that

plaintiff could return to her past relevant work as a hotel housekeeper, as previously

performed by her and as generally performed in the national economy (AR2 72–73).

3

In reaching his determination, the ALJ found plaintiff was suffering from severe impairments consisting of bilateral carpal tunnel syndrome, myofascial pain disorder, fibromyalgia, cervical degenerative disc disease, bilateral shoulder impingement syndrome, and major depression. (AR2 at 72).  Nonetheless, the ALJ found that none of plaintiff's conditions met the listed impairments of Appendix 1 to Subpart P of the Social Security regulations (*id.*).  Plaintiff apparently does not contend on appeal that any of her conditions met the criteria for listed impairments.

In his written decision the ALJ summarized, but ultimately rejected, some of plaintiff's self-described limitations including a self-professed inability to walk more than 10 minutes, inability to stand more than 15-20 minutes, sit more than 15-30 minutes, or use her hands more than a few seconds before needing to run them hot water and rest, finding her testimony on these points "not entirely credible" in light of reports from treating, examining and reviewing practitioners and a lack of any medical opinions to support the limitations to which plaintiff testified (AR 71).

In a variation from the usual formulation, the ALJ ultimately found that plaintiff lacks the residual capacity to lift and carry more than 20 pounds occasionally, or 10 pounds frequently, to perform postural activities (climbing, balancing, stooping, kneeling, crouching or crawling) more than occasionally, and she lacks the capacity to perform more than semi-skilled work (AR2 at 72).  Converting his formulation into a positive finding, the ALJ stated that plaintiff retained the residual functional capacity to "perform the exertional demands of light work or work which requires maximum lifting of 20 pounds and frequent lifting of up to 10 pounds." (AR2 at 71).  The ALJ made no

4

findings as to plaintiff's ability to walk, stand or sit for any period of time, or to use her hands, or any limitations as to such functions.

In presenting plaintiff's functional capacity as a hypothetical to the vocational expert at the hearing held on April 5, 2000, the ALJ described the limitations by stating that she was "limited to the full range of light work in terms of all the exertional requirements of light work" and that her postural limitations were "occasional climbing, balancing, stooping, kneeling, crouching and crawling." (AR2 at 481). He added to the hypothetical that the person "can lift or carry up to shoulder level occasionally 20 pounds, frequently 10 pounds. Over shoulder level, 10 pounds occasionally, five pounds frequently" and could "frequently walk" up to six hours in an eight-hour day (AR2 at 482). The hypothetical included the limitation that the person could stand frequently but needed to be able to "posturally shift" meaning to "move around and shift their weight," and that sitting was limited to 30 to 45 minutes at one time, and two out of eight hours in a day, with the ability to "move around and adjust themselves in their seat as needed." (AR2 at 483).

In response to this hypothetical the vocational expert opined that the person could perform the position of hotel housekeeper as that position is generally performed (AR2 at 483). The ALJ then added the additional limitation of not lifting greater than 20 pounds, and using "bilateral wrist splints" for frequent use of the hands or arms (AR2 at 483-84). With this limitation, the VE testified that the person could still perform the position of housekeeper. *Id.*

Based on this record, the ALJ concluded that plaintiff could perform her former

position as hotel housekeeper because in that position she was not required to lift and carry more than 20 pounds occasionally or 10 pounds frequently, or perform postural activities more than occasionally, and because it was unskilled work  (AR2 at 72-3). Although not expressly stated by the ALJ, the burden at step four of the process was upon the claimant to demonstrate that she "could not return to her past work."  *Potter v. Secretary of Health and Human Services*, 905 F.2d 1346, 1349 (10th Cir. 1990).  *See also Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).  Of course, if the ALJ makes a determination of no disability at step four, he need not inquire into the criteria at step five.  *Id.*

**PLAINTIFF'S APPEAL OF JUDGE CONAWAY'S DECISION**

Plaintiff raises five issues on appeal, four of which appear to relate to the determination by ALJ Conaway.  She first argues that he disregarded objective and subjective evidence of her functional limitations, making an erroneous finding that her testimony was not credible.  He therefore, plaintiff contends, developed an inaccurate description of her residual functional capacity.  As a result, plaintiff argues, he erroneously concluded that she could return to work as a hotel housekeeper.  Finally, plaintiff alleges the ALJ improperly failed to consider the opinion of a vocational evaluator named Robert Schmidt, who provided an assessment dated December 14, 1999 reporting that plaintiff could not return to her prior work.

**ANALYSIS**

<u>Plaintiff's Credibility</u>

Plaintiff testified at the hearing held on December 16, 1999 regarding her mental

6

and physical condition, stating that she felt she was suffering from depression (AR2 at
498, 504-05) and that she was generally "having problems" with her legs, back
shoulders and arms (*id.* at 505).  Plaintiff did not testify as to why she left her prior
work, and only implicitly suggested that she could not work at other jobs due to pain,
although never expressly stating so.  (*See* AR2 at 494-95).  She was not specific about
the degree of pain, stating only that the colder the weather the worse she feels (AR2 at
509).  She acknowledged to the ALJ that there were "good days" when she wanted to
believe she was getting better (*id.*).

        In response to questions from the ALJ, plaintiff stated that she could lift 10
pounds, walk for about 10 minutes, sit for about 15 to 30 minutes, stand for 15 to 20
minutes, provided that she could change positions (AR2 509-10).  She testified that she
lies down twice per day for at least 10 minutes to get relief from pain (AR2 at 510).  She
testified that she could climb a flight of stairs, but would not want to climb more than
that (AR2 at 511). Plaintiff further asserted that she had only limited use of her hands
and that she "sometimes" runs them under hot water because that makes them feel
better (AR2 at 512).  She stated that since 1996 she wears wrist splints or braces on
each hand (AR2 at 497).  Plaintiff also testified briefly at that hearing held on April 5,
2000, primarily about her use of wrist braces and the work she was required to perform
at her prior housekeeping jobs at the Marriott Hotel and at a hospital (AR2 at 473-76).

        As noted, ALJ Conaway found plaintiff's subjective testimony about her
impairments and their impact on her work ability to be "not entirely credible" due to
contrary medical opinions which he summarizes in his opinion.  As a general rule,

credibility determinations are peculiarly the province of the finder of fact, and should not be overturned if supported by substantial evidence.  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  Plaintiff argues on appeal that the ALJ's credibility finding is not supported by evidence on the record, citing to two sets of medical reports which plaintiff contends support her subjective testimony (Plaintiff's Brief at 13).

The first set of reports cited by plaintiff, those of Dr. Turner regarding plaintiff's neck pain and cervical radiculopathy which would support a subjective claim of pain, were written between August 2001 and July 2002, long after the ALJ Conaway's decision, and relate primarily to a surgical procedure that was recommended and ultimately performed by Dr. Turner on January 31, 2002 (AR1 at 87-92).  These reports do not provide a reason to overturn the ALJ's credibility findings.

The second report, that of Dr. John Hughes, is dated May 21, 1997 (AR1 at 40-43), and reports on only one visit with plaintiff, which occurred several years before the date of the hearing.[3]  The ALJ did not specifically address Dr. Hughes report.  Plaintiff asserts in her brief that Dr. Hughes report indicates that plaintiff had myofascial pain syndrome in her forearms, wrist and elbow areas (Plaintiff's Brief at 13). The Court certainly finds this description as listed in the impression formed by Dr. Hughes (AR1 at 42).  Plaintiff states that such findings support plaintiff's statements that she "needs to lie down during the day and that she has good days and bad days." (Plaintiff's Brief at 13).  The Court finds no such medical conclusions in Dr. Hughes' report.  The only

---

[3] Dr Hughes also issued a report regarding plaintiff dated September 27, 2002, which was not presented to ALJ Conaway.  This report was addressed by ALJ Martinez, and is discussed below.

medical conclusion that Dr. Hughes offers is that plaintiff's condition yields a "3% impairment of the whole person." (AR1 at 42).  Such a conclusion is not binding on the ALJ, and in any event does not undermine the credibility findings of the ALJ.

Plaintiff also argues that the ALJ disregarded her testimony by not including the restriction involving the wrist splints and limitations as to bending, kneeling, squatting and crawling in his order. (Plaintiff's Brief at 13).  A review of the ALJ's written decision of May 9, 2000 indicates that it does not mention the wrist splints as a limitation, nor the specific activities listed above by plaintiff, but does find limitations on what he refers to as "postural" activities of plaintiff (AR2 at 72-73), which the Court understands to mean the limitations mentioned in plaintiff's brief.  However, in the hypothetical presented to the vocational expert at the hearing on April 5, 2000, as plainly indicated on the record, the ALJ assumed that plaintiff would have to wear the wrist splints (*see* AR2 at 483-84) and he assumed the postural limitations specified in plaintiff's list (*see* AR2 at 481). Thus the ALJ did not disregard plaintiff's testimony as to these aspects of her professed limitations.

<u>Plaintiff's Residual Functional Capacity</u>

Plaintiff's second argument repeats some of the same points made in her first argument such as the issue regarding the wrist splints (*see* Plaintiff's Brief at 14), but this Court's findings will not be repeated.

Plaintiff also argues that additional restrictions should have been included in the ALJ's residual functional capacity findings, including the restriction of no more than 4-6 hours sitting, standing, or walking in an 8-hour day, based on an opinion from a Dr.

9

Mayhew issued on January 28, 1999 (Plaintiff's Brief at 14).  The opinion of Dr.

Mayhew found at AR1 at 359-62, states that plaintiff could sit, stand or walk for 4-6

hours out of an eight hour work day, but she would need postural shifts every 15-30

minutes for comfort (AR1 at 362).  Again. It is true that the ALJ did not recite specific

findings in his written decision that include these limitations.  But in the hypothetical

presented to the vocational expert at the hearing on April 5, 2000, the ALJ assumed the

limitation that plaintiff could walk up to six out of eight hours in a day (AR2 at 482),

stand with postural shifts, and sit only two hours out of an eight hour day, with sitting

limited at one time to 30 to 45 minutes (AR2 at 483).  Based on this record, the Court

cannot find, as plaintiff argues, that the RFC employed by the ALJ did not adequately

address plaintiff's limitations.

The Court also finds that the residual functional capacity found by ALJ Conaway

was supported by other substantial evidence in the record.  A vocational evaluation

performed in May 1998, although primarily addressing plaintiff's aptitude and interest,

rather than her physical limitations, notes that plaintiff's "environmental

accommodations" include only "breaks as needed to rest her wrists," no frequent lifting

of more than 20 pounds, and use of a wrist splint (AR1 at 234).  The evaluation lists a

number of jobs which plaintiff could possibly perform.  (See AR1 at 235-37).

A functional capacity analysis performed in March 1999 reported that plaintiff

could occasionally lift 20 pounds and frequently lift 10 pounds; could stand, sit and

walk 6 hours of an eight hour day; and could push and pull without limitations (AR1 at

273) –findings on which the ALJ could, and apparently did, rely.  The same report

states that plaintiff could only occasionally stoop, kneel, crouch (AR1 at 274), as the ALJ found.

An August 1999 questionnaire completed by a Dr. Bruce Belleville, apparently at the request of plaintiff's counsel, noted only a restriction "of lifting up to 20 pounds and use of splints bilaterally for any activity involving repetitive motion work."  AR1 at 454.

With such corroboration, the Court cannot conclude that the residual functional capacity found by ALJ Conaway was not supported by substantial evidence on the record as a whole.

<u>Plaintiff's Ability to Return to Previous Work</u>

Plaintiff also argues that even if the ALJ correctly determined plaintiff's residual functional capacity, he did not correlate that capacity with the "physical and mental demands" of her previous work (Plaintiff's Brief at 16).  The Court does not agree with plaintiff.

Here, the ALJ expressly found: "In her past work as a hotel housekeeper, as generally performed in the national economy, the claimant was not required to lift and carry more than 20 pounds occasionally or 10 pounds frequently, perform postural activities more than occasionally, and perform more than unskilled work." (AR2 at 73, Finding No. 6).  In reaching this determination as to the requirements of plaintiff's past work, the ALJ relied on both the description of the former work given by plaintiff in her testimony at the April 5, 2000 hearing (AR2 at 473-76) and the testimony of the vocational expert as to the general requirements of the position (AR2 at 479-80; 482).

11

Thus there was substantial evidence on the record to support the ALJ's description of the requirements of plaintiff's former position.

Plaintiff also appears to argue that the description of plaintiff's former position, as defined in the Dictionary of Occupational Titles at definition 323.687-014, requires "reaching, bending and twisting" as to which plaintiff was limited by the reports of Drs. Mayhew and Hughes (Plaintiff's Brief at 17).  The DOT definition of plaintiff's former work is correctly quoted in plaintiff's brief, but says nothing about the physical demands of "reaching, bending and twisting" as plaintiff would suggest.  The report of Dr. Hughes from May 21, 1997 contains no specific limitation as to plaintiff's reaching, twisting and bending (AR1 at 41-3).   The report of Dr. Mayhew does state that plaintiff should "avoid activities" that require her to reach and bend, but it is unclear from the report whether plaintiff can perform such activities at least occasionally.  *See* AR1 at 362. Given Dr. Mayhew's overall assessment that plaintiff could, at that time, sit, stand or walk for 4-6 hours in an eight-hour day and lift 25 pounds frequently and 50 pounds occasionally, *id.*, the Court cannot say that the ALJ erred in finding that Dr. Mayhew's report did not foreclose plaintiff from performing the duties of a housekeeper as that job is defined in the DOT.

Report of Plaintiff's Vocational Expert

Finally, plaintiff argues that ALJ Conaway erred in not taking into account a report submitted by vocational evaluator Robert L. Schmidt, dated December 14, 1999, and a second report by vocational evaluator Roger W. Cozens, dated June 15, 2000 (Plaintiff's Brief at 17-19).  It is true that the ALJ's decision of May 9, 2000 does not

discuss either report.  However, the Cozens report, found in AR2 at 163-64, was not submitted until after the ALJ's determination had been released, and it was addressed in the subsequent decision by ALJ Martinez, as discussed below. The Schmidt report, found in AR1 at 245-52,  was apparently tendered to th ALJ at the hearing on December 16, 1999 (*see* AR1 at 245).  Although the ALJ did not expressly weigh the Schmidt report in his decision rendered on May 9, 2000, the Court does not find this to be reversible error.

First, a report by a vocational expert is not listed among the "acceptable medical sources" to which the ALJ must give some deference if supported by medical findings. *See* 20 C.F.R. § 404.1513(a).  Second, Mr. Schmidt stated as his conclusions that '[d]ue to the nature of [plaintiff's] present medical condition and if any credence is given to her restrictions, she is limited to engage in type of employment considered to be within less than sedentary physical demand level." (AR1 at 250).  He also opined that she "is precluded from returning to her preinjury occupation . . . ." (AR1 at 251).

However, it is apparent from Mr. Schmidt's report that the physical restrictions assumed by him in reaching these conclusions are based almost entirely on plaintiff's self-reported limitations.  *See* AR1 at 248, 250.  As noted above, those limitations were properly rejected by the ALJ as in conflict with other objective medical evidence and as not supported by the record.  Where an opinion of a vocational expert is based on evidence not supported by the record, the opinion has no evidentiary value.  *See e.g. Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).  Here, since Mr. Schmidt's opinion is based on restrictions which were not supported by the record, the ALJ made no error

in not crediting the opinion.

For the above reasons, the Court finds that the determination of ALJ Conaway is supported by substantial evidence on the record as a whole.

**ALJ MARTINEZ'S DETERMINATION OF SEPTEMBER 3, 2003.**

As noted above, on November 13, 2000, plaintiff filed another application for disability benefits (AR2 107-11).  This application again requested benefits commencing February 6, 1997.  In her written decision of September 3, 2000, the ALJ apparently treated plaintiff's case as both a request to reopen the prior denied application and a request for a new period of benefits.

In her written decision of September 3, 2003, Administrative Law Judge Martinez first reviewed whether plaintiff had established good cause to reverse the final decision of ALJ Conaway and the Appeals Council as to plaintiff's November 20, 1998 application for benefits.  As explained in the decision of ALJ Martinez, application of the doctrine of *res judicata* ordinarily bars review of a final decision with respect to a social security disability claim, 20 C.F.R. § 404.957(c)(1), unless the claimant seeks to reopen the decision after 12 months but within four years of the determination and can show "good cause" to reopen the claim.  20 C.F.R. § 404.988(a) and (b).  The ALJ apparently found that plaintiff did not seek to reopen the prior decision within the 12-month period, and hence was required to show "good cause" to reopen.  Good cause is found, as provided in 20 C.F.R. § 404.989, when the claimant furnishes "new and material evidence."

ALJ Martinez summarized and reviewed the additional evidence submitted by

14

plaintiff after the determination by ALJ Conaway, including that which had been submitted to the Appeals Council.[4] (AR2 at 45-46). The ALJ concluded that the information did not establish "good cause" to reopen the determination made on plaintiff's November 20, 1998 application for benefits. AR2 at 46. Plaintiff does not appeal this determination to this Court.

ALJ Martinez also considered whether plaintiff had established a disability with an onset after May 10, 2000, the date following the decision by ALJ Conaway. She concluded, unlike ALJ Conaway, that plaintiff had established that she could not return to her former work as a hotel or hospital housekeeper, or as a teacher's aide or fast food worker (AR2 at 56). Nonetheless, the ALJ denied plaintiff's application for benefits at step five of the five-step process. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). ALJ Martinez found that even though plaintiff could not perform her past work, she still could perform "a significant range of sedentary work" (AR2 at 56) available in the national economy, consistent with her age, education, work experience and residual functional capacity. This other work included work as a final assembler or surveillance systems monitor (AR2 at 57).

In reaching this determination, ALJ Martinez found that plaintiff had severe impairments including cervical degenerative disc disease post surgery, lumbar and thoracic degenerative disc disease, fibromyalgia and myofascial pain syndrome,

---

[4] It appears that the materials that submitted to the Appeals Council following the decision of ALJ Conaway consisted of the Cozens vocational evaluation of June 15, 2000, and a report from Elizabeth Winston, M.S. and Lee A. Rosen, Ph.D. dated June 13, 2000. *See* AR1 at 26.

obesity, bunions, hypothyroidism and a depressive disorder (AR2 at 51).  However, the

ALJ found that none of these conditions met the listed impairments of Appendix 1 to

Subpart P of the Social Security regulations (*id. at* 51-52).  Plaintiff does not contend

on appeal that any of her conditions met the criteria for listed impairments.  The ALJ

also found that plaintiff had failed to establish severe impairments consisting of bilateral

carpal tunnel syndrome or bilateral shoulder impingement impairment syndrome during

the period relevant to her decision (AR2 at 52).

Based on these impairment findings, ALJ Martinez formulated the residual

functional capacity of plaintiff as follows.  She found that plaintiff did not lack, for any

period of 12 consecutive months, the residual functional capacity to perform work

activities with the following restrictions: lift/carry 10 pounds occasionally and frequently;

stand and walk limited to 10 minutes each hour for a total of 1 to 2 hours per day; sit for

6-8 hours per day; no stooping or twisting at the waist; occasional kneeling, crouching,

and crawling; limited to simple instructions with occasional contact with a supervisor,

coworkers and the general public (AR2 at 55, 58).  The ALJ also listed restrictions of

activities from the emotional perspective, the so-called "B" criteria, including moderate

difficulties in maintaining social functioning, concentration, persistence or pace (*id.*)

Given this RFC, ALJ Martinez presented a hypothetical to vocational expert

Deborah Christensen, who testified at the hearing held on August 20, 2003.  Ms.

Christensen opined that a person with the presented RFC could not perform plaintiff's

past relevant work, but that a person with the hypothetical RFC presented could make

a vocational adjustment and perform other unskilled sedentary work (AR2 at 57).  She

identified the position as final assembler and surveillance systems monitor as jobs

which the plaintiff could perform, and which existed in significant national economy.

Based on these findings and this evidence, ALJ Martinez concluded that plaintiff did not

meet the definition of disabled.

**PLAINTIFF'S APPEAL OF ALJ MARTINEZ'S DECISION**

Of the five separate issues plaintiff raises on appeal, it appears to the Court that

three relate to the determination by ALJ Martinez.  Plaintiff first argues that ALJ

Martinez developed an inaccurate description of her residual functional capacity by not

including the use of wrist splints as part of plaintiff's restrictions, and by failing to

include Dr. Hughes limitations of no activities involving bending kneeling, squatting or

crawling. (Plaintiff's Brief at 15).  Plaintiff also claims that in formulating the RFC, and in

concluding that plaintiff could perform other relevant work, ALJ Martinez improperly

failed to consider the opinion of vocational evaluator Robert Schmidt, described above,

as well as the assessment of Mr Cozens described above, and an evaluation by a

vocational expert named Dan Best, dated January 3, 2002 (Plaintiff's Brief at 18-19).

Finally, plaintiff contends that the finding that she could work as a "final assembler" or

as a surveillance systems monitor ignores the restrictions placed on plaintiff by Dr.

Hughes regarding her ability to work with simple instructions (Plaintiff's Brief at 20).

**ANALYSIS**

<u>The RFC Presented to the Vocational Expert</u>

It is true that ALJ Martinez made no findings in her written decision that plaintiff's

restrictions include the use of wrist splints or braces.  The ALJ, however, explained in

17

her decision that while claimant had been found at the previous hearing before ALJ Conaway to have a history of bilateral carpal tunnel syndrome and bilateral shoulder impingement and utilized wrist braces, a consultative examination in March 2001 disclosed no evidence of joint effusions or deformities and a full range of motion in both shoulders and wrists (AR2 at 52).  In addition, plaintiff herself testified at the hearing on August 20, 2003, that she was wearing the wrist braces less frequently because she had been asked by her doctor to try to not wear the braces as much (AR2 at 454).  Thus, when ALJ Martinez presented the hypothetical to the VE at the hearing on August 20, 2003 (AR2 at 464-65), she did not include the restriction of wrist braces or splints, as ALJ Conaway had done.

While this is apparently the thrust of plaintiff's argument to this Court, it is a "red herring" as far as the record is concerned.  The transcript of the August 20, 2003 hearing reveals that while the ALJ did not include wrist braces as a restriction in her hypothetical presented to VE Deborah Christensen, plaintiff's counsel on cross-examination emended the hypothetical to add the restriction of wrist braces.  In response to counsel's question, the VE answered that such additional restriction did not affect her answer as to plaintiff's ability to perform either of the two identified jobs. *See* AR2 at 32-33.[5]  Thus the Court finds no merit in plaintiff's argument on this point.

---

[5] It appears that page 29 of the official transcript of the August 20, 2003 hearing, which would appear at AR2 at 466, was inadvertently omitted from the administrative record. However, a separate transcript of the hearing was apparently prepared by plaintiff's counsel, and was transmitted by him to the Appeals Council by letter dated June 18, 2004 (AR2 at 9). That copy of the transcript includes the testimony that appears on omitted page 29 of the official transcript.  (*See* AR2 at 32-33).

In the hypothetical presented to VE Christensen, ALJ Martinez did include postural restrictions of "no stooping or twisting at the waist" and kneeling, crouching and crawling, limiting them to being performed occasionally (AR2 at 464). Plaintiff contends that the restrictions included in the hypothetical, based on a September 27, 2002 report by Dr. Hughes, should have been "no activities involving bending, kneeling squatting or crawling." (Plaintiff's Brief at 15). The report of Dr. Hughes cited by plaintiff appears in the administrative record at AR2, pp. 360-63.

Contrary to plaintiff's implication, ALJ Martinez did not ignore the Dr. Hughes report cited by plaintiff, and in fact she discussed his several reports at great length in her decision. *See* AR2 at 48-50; 54-55. Indeed, ALJ Martinez stated that she accorded the opinion of Dr. Hughes "substantial weight" in determining plaintiff's residual functional capacity (AR2 at 55). Thus she found that the restrictions, as described in his report, were "no activities that involve bending, stooping or twisting and limitation on activities that involving kneeling, squatting and crawling." *Id.*

As stated in the report of Dr. Hughes dated September 27, 2002, this appears to be exactly what he meant, for he writes in one sentence "[s]he [plaintiff] should also not perform any activities that involve bending, stooping or twisting because of highly reduced lumbar spinal ranges of motion." (AR2 at 363). In the next sentence, Dr. Hughes writes: "With respect to her knees I would recommend limitation on any activities involving kneeling, squatting, and crawling." *Id.* Plaintiff would apparently have this Court, and the ALJ, read Dr. Hughes report as if it contained only one sentence regarding plaintiff's postural activities, collapsing the two separate sentences

19

into the revised version contained in plaintiff's brief: "Dr. Hughes issued restrictions of no activities involving bending, kneeling, squatting or crawling." (Plaintiff's Brief at 15). Simply put, plaintiff is misquoting Dr. Hughes.  While he did say plaintiff should not perform any activities involving bending, stooping or twisting, as the ALJ included in the hypothetical, he did not say "no activities" involving kneeling, squatting or crawling. What he said was that there had to be "limitation" on such activities. The ALJ reasonably understood this to mean that such activities could only be done "occasionally" by plaintiff, and so she constructed the hypothetical.  This Court cannot say such construction of the hypothetical was not supported by the record or that such interpretation of Dr. Hughes letter was unreasonable.

<u>The Opinions of Plaintiff's Vocational Experts</u>

Plaintiff next argues that ALJ Martinez disregarded the opinions of vocational experts Schmidt, Cozens and Best (Plaintiff's Brief at 18-19).

It is true that ALJ Martinez did not discuss the opinion of vocational expert Robert L. Schmidt, dated December 14, 1999, but for the same reasons discussed above at pp. 12-13 the Court finds no error in failing to do so.

ALJ Martinez did not ignore the report of vocational expert Cozens, dated June 15, 2000, as plaintiff suggests, but rather considered it, discussed it in some detail, and rejected it as not persuasive for the reasons expressed in her decision (AR2 at 45-46; 55-56).  The ALJ correctly found that an opinion of a vocational expert is not treated as an acceptable medical source under 20 C.F.R. § 404.1513(a).  She further found that the opinion of Mr. Cozens was inconsistent with other substantial evidence of record,

20

including the vocational evaluation of Vocational Expert Associates, Inc., dated July 5, 2000. Thus the Court can not agree with plaintiff that the ALJ "failed to consider" this report.

Moreover, plaintiff has submitted no reasons why, or even argued that, the ALJ's determination on the weight to be given to the report of Mr. Cozens is erroneous. Nonetheless, the Court has reviewed the two-page report by Mr. Cozens and agrees with the ALJ that it is entitled to little or no weight. First, Mr. Cozens opines that plaintiff is "not capable of employment," (AR2 at 164) but gives no specific limitations of the physical impairments that support that conclusion, nor does he cite to medical evidence to support the assumed impairments. Moreover, the ultimate decision on disability is a conclusion reserved to the province of the Commissioner and is not a matter on which the ALJ defers to a vocational expert, or any expert. 20 C.F.R. § 404.1527(e)(1). There is no error in the ALJ's treatment of the Cozens report.

Upon careful review of the ALJ's decision of September 3, 2003, the Court finds no reference to the report of Mr. Best, dated January 3, 2002 (AR1 at 27-33). However, it is not clear that this report was actually submitted to ALJ Martinez. The report is not found within the exhibit sections of either AR1 or AR2, but rather is located in a section in AR1 where post-hearing correspondence is generally included. It may be, as the Commissioner suggests, that this report was part of the evidence submitted to the Appeals Council after the May 2000 decision by ALJ Conaway. *See* Defendant's Brief at 29-30. While the Court finds no clear indication how this document became part of the administrative record, it does not appear to be among the exhibits submitted

21

before ALJ Martinez.  That would explain why she did not address the Best report.

The Court has, nonetheless, reviewed the Best report on the assumption that it was submitted to the Appeals Council and therefore is part of the record on review to this Court.  *See Gomez v. Chater*, *supra*, 74 F.3d at 971.  The Court concludes that the report, even if it was or had been before ALJ Martinez, would not undermine the substantial evidence of record that supports her decision, for the following reasons.

First, as noted with respect to the reports of Vocational Experts Schmidt and Cozens, a vocational expert is not an acceptable medical source to whom the ALJ must give deference.  Second, while the report by Mr. Best opines that plaintiff is not capable of "regular and reliable employment," he candidly acknowledges that his opinion is based on "information provided by [plaintiff] in regard to her overall functioning and capacities."  (AR1 at 32-33).  He states that "if only the restrictions outlined by Dr. Irish were utilized in seeking employment or presenting hypothetical work situations available to Ms. Mondragon it would be possible to identify any number of available jobs and job openings." (AR1 at 32).  For the reasons set forth above, the ALJ found plaintiff's residual functional capacity to be more consistent with the restrictions outlined by Dr. Irish, and not as self-professed by plaintiff.  Thus, the opinion of Mr. Best, like that of Mr. Schmidt, is not supported by the record.  Where an opinion of a vocational expert is based on evidence not supported by the record, the opinion has no evidentiary value. *See Gomez v. Chater, supra*, 74 F.3d at 971.

For whatever reason Mr. Best's opinion was not referenced in the decision of ALJ Martinez, this Court finds no reversible error in the fact that no weight was given to

the report.

<u>Whether plaintiff could perform the other jobs as found by ALJ Martinez.</u>

Plaintiff's final argument is that she cannot perform the two jobs provided in step 5 of the ALJ's sequential evaluation because they exceed her residual functional capacity as found by the ALJ.  Plaintiff makes two points to support this argument.

First, she first argues that the ALJ erred in finding that plaintiff could perform the job of "final assembler," given plaintiff's assertion that she needs to wear wrist splints (Plaintiff's Brief at 20).   However, as explained above, the vocational expert was presented with this restriction in the hypothetical as modified by plaintiff's counsel and testified that plaintiff could perform the job wearing the splints.

Next plaintiff argues that the general educational development ("GED") set forth in the Dictionary of Occupational Titles for the job of surveillance systems monitor requires a "reasoning and language development" of level "3."  Plaintiff claims that because the ALJ found that her residual functional capacity included the ability to follow "simple instructions," which plaintiff equates to a GED reasoning development of level "1", the ALJ erred in finding that plaintiff could perform the job of surveillance systems monitor (Plaintiff's Brief at 20).

The Court does not agree that plaintiff's argument renders the ALJ's decision inconsistent with the substantial evidence of record.  While it is true that the DOT lists a GED reasoning level of 3 for the above job, it is not at all clear to the Court that such level sets forth a requirement that must be met by the claimant.  First, the explanation of the GED set forth as the introduction to its definitions explains that it "embraces

23

those aspects of education (formal and informal) which are required of the worker for

satisfactory job performance.  This is education of a general nature which does not

have a recognized, fairly specific occupational objective.  Ordinarily, such education is

obtained in elementary school, high school, or college.  However, it may be obtained

from experience and self-study."[6]  Thus, the reasoning component of the GED may be

supplemented by education and experience, and is not as rigid a component of ability

to perform a job as plaintiff would suggest.  Nor does the record contain evidence that

employers would reject plaintiff for the job of surveillance systems monitor solely due to

lack of minimal educational requirements.

Moreover, what the ALJ found was that plaintiff could perform a limited range of

sedentary work, subject to her exertional and non-exertional limitations (AR2 at 57).

Given those limitations, one of which is the ability to follow simple instructions, the VE

testified that plaintiff could perform the job of systems surveillance monitor.  Despite

what plaintiff states in her brief, it is not true that the nonexertional limitation expressed

by the ALJ as following "simple instructions" precludes plaintiff from functioning at the

level "3" reasoning included in the GED.  Level 3 reasoning is defined as applying

"commonsense understanding to carry out instructions furnished in written, oral, or

diagrammatic form.  Deal with problems involving several concrete variables in or from

standardized situations."[7]   The Court does not find that this definition is inconsistent

---

[6] Dictionary of Occupational Titles, Appendix C, Components of the Definition Trailer
http://www.occupationalinfo.org/appendxc_1.html.

[7] *Id.*

24

with, or more demanding than, the nonexertional limitation as expressed by the ALJ.

In contrast, plaintiff argues that the ALJ's nonexertional limitation can only equate to level "1" reasoning GED, stating that level "1" requires applying "commonsense understanding to carry out simple instructions." (Plaintiff's Brief at 20). However, this is not an accurate rendition of the level "1" reasoning definition contained in the GED.  Rather, the express definition is: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."[8]  The ALJ did not limit plaintiff to carrying out only "one- or two-step instructions."  Thus, the Court cannot say the vocational expert improperly testified that plaintiff was capable of performing a job that required a higher level of reasoning than attributed to plaintiff's residual functional capacity.

**CONCLUSION**

For the reasons set forth above, and based on the administrative record, this Court finds that plaintiff has not met her burden in case No. 04-1631 to show that she could not perform work he had done in the past as required by *Williams v. Bowen, supra*, 844 F.2d at 751.

This Court also finds that the Commissioner has met her burden in case No. 04-2104, to show that plaintiff retains the residual functional capacity to perform work that exists in significant numbers in the national economy.  Accordingly, there is substantial evidence in the record to support the conclusion that plaintiff is not disabled.

---

[8] *Id.*

The Commissioner's decisions in both cases is upheld.

Dated: December 29, 2005.

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge